# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WISCONSIN

In re:

THE COLLEGIATE OF MADISON, LLC

    Debtor.

Case No. 19-13930-cjf
Chapter 11

CC6 Collegiate LLC,

    Plaintiff-Creditor,

v.

The Collegiate of Madison, LLC,

    Defendant-Debtor.

Adv. Case. No. _____

## ADVERSARY COMPLAINT

NOW COMES interested party and creditor in these proceedings, CC6 Collegiate LLC (as the assignee of Secure Fund, LLC, "**Buyer**"), by and through its attorneys Michael Best & Friedrich LLP, and for its Adversary Complaint against The Collegiate of Madison, LLC ("**Debtor**"), respectfully represents to the Court and alleges as follows:

### INTRODUCTION

Pre-petition, the Buyer and the Debtor (the "**Parties**") entered into a binding commercial offer to purchase the real and personal property of the Debtor for $9,700,000.00. Closing was scheduled for November 26, 2019. However, the Debtor filed Chapter 11 on November 24, 2019—the Saturday before closing. The Buyer was, and continues to be,

ready, willing, and able to close. Since its bankruptcy filing, the Debtor has indicated that it intends to reject the agreement.

## JURISDICTION

1. This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper in this District pursuant to 28 U.S.C. § 1408.

3. This adversary proceeding is brought pursuant to Fed. R. Bankr. P. 7001(2), (7), and (9) as a proceeding to determine the validity and extent of the Buyer's interest in property, and a proceeding to obtain equitable relief, including declaratory judgment, relating to the Buyer's interest in property.

4. The Plaintiff knowingly and voluntarily consents to entry of a final order or judgment by this Court.

## PARTIES

5. The Buyer is a Delaware limited liability company that is co-managed by Cielo Cornerstone, LLC and Gulf3 Investments, LLC. The Buyer is a creditor and interested party in the Debtor's Chapter 11 case.

6. The Debtor is a Wisconsin limited liability company that is managed by The Collegiate Prop Man, Inc., which, in turn, is managed by Harold Langhammer as its managing member.

## FACTUAL BACKGROUND

**The Agreements**

7. The Buyer (through two affiliated companies eventually known as CC6 Varsity LLC and CC6 Collegiate LLC) sought to purchase two residential apartment complexes near the UW-Madison campus known as "**The Varsity**" and "**The Collegiate**."

8. Both The Varsity and The Collegiate were owned by companies under the common ownership and/or control of Harold Langhammer.

9. The Parties anticipated that the purchase agreements for The Varsity and The Collegiate were a "package" deal, in that both offers were either to be accepted or rejected together.

10. On June 12, 2019, CC6 Varsity LLC (an affiliate of the Buyer) executed a purchase agreement to buy The Varsity. The purchase price for The Varsity was $6.9M.

11. Also on June 12, 2019, the Buyer executed a purchase agreement to buy The Collegiate. A true and correct copy of the Buyer's offer to purchase The Collegiate, which is the subject of this Adversary, is attached as **Exhibit 1** (the "**Agreement**").

12. The purchase price for The Collegiate was $9.7M.

13. The Agreement was contingent upon Buyer obtaining approval to assume the Debtor's existing mortgage note on The Collegiate.

14. LNR Partners, LLC ("**LNR**") was, and upon belief remains, the servicer of the first-position mortgage note held by certain participating lenders (the "**LNR Note**"). Upon belief, LNR has authority in all respects to make decisions regarding the LNR Note.

15. Instead of paying cash for the purchase of The Collegiate, the Buyer understood that it would need to assume the LNR Note to avoid unnecessarily triggering a pre-payment penalty under the LNR Note.

16. Accordingly, the Agreement included a provision whereby the Buyer would assume or acquire the LNR Note as a condition to closing.

### The Parties' Pre-Closing Activities

17. On August 5, 2019, Secure Fund, LLC (the original buyer under the Agreement) assigned its purchase rights to CC6 Varsity LLC (for The Varsity) and CC6 Collegiate LLC (for The Collegiate). A true and correct copy of the August 5, 2019 Assignment of the Agreement is attached as **Exhibit 2**.

18. On August 19, 2019, the Buyer released all inspection contingencies on the Agreement. A true and correct copy of the Buyer's contingency waiver letter dated August 19, 2019 is attached as **Exhibit 3**.

19. On August 16, 2019, the purchase of The Varsity closed. A true and correct copy of the Closing Statement for The Varsity is attached as **Exhibit 4**.

20. On August 27, 2019, the Buyer and Debtor signed a First Amendment to the Agreement. A true and correct copy of the First Amendment is attached as **Exhibit 5**.

21. The First Amendment provided further details regarding the Buyer's agreement to assume the LNR Note.

22. The First Amendment also allowed for the release of $22,622 in cash to be disbursed to the Debtor to pay Charter Cable Partners, LLC, a vendor for The Collegiate.

23. The Buyer worked extensively to obtain LNR's consent regarding the Buyer's assumption of the LNR Note.

24. Among other things, in anticipation of Closing, the Buyer:

(a) Performed various due diligence items, including an inspection of The Collegiate that cost the Buyer $2,500;

(b) Paid an amount of $31,500 to LNR in connection with the Buyer's assumption of the LNR Note (with such amount including a legal retainer of $15,000 payable to LNR's counsel, an application/processing fee of $15,000 payable to LNR, and a third party deposit fee of $1,500 payable to LNR). The sum of $31,500 was paid by the Buyer via wire transfer to LNR and LNR's counsel on August 27, 2019;

(c) Incurred no less than $89,000 in legal fees related to the Agreement;

25. As of November 11, 2019, LNR did in fact approve the Buyer's proposed assumption of the LNR Note. A true and correct copy of the Lender's November 11, 2019 e-mail to the Buyer is attached as **Exhibit 6**.

26. No other financing contingency existed in the Agreement.

27. The Buyer and Debtor proceeded to finalize the transaction and agreed to set a closing date of November 26, 2019 (the "**Closing**").

28. On November 22, 2019, Homestead Title Company, LLC prepared a Closing Statement. A true and correct copy of the Closing Statement is attached as **Exhibit 7**.

29. Among other things, the Closing Statement provided for payments of certain liabilities of the Debtor that were associated with The Collegiate, including: $125,984 of property taxes; $15,000 of attorneys' fees to Herrick & Kasdorf, LLP; $103,715 to RSP

5

Partners; $35,000 to Ascentium Capital; $13,355 in municipal services to the City of Madison; and $5,109 for final water bills to the City of Madison, among other charges.

30. The Closing Statement also accounted for the Buyer's assumption of the LNR Note.

31. According to the Closing Statement, the Buyer would need to bring $1,837,190 to Closing.

32. According to the Closing Statement, the total sum of $1,489,604 was projected to be disbursed to the Debtor as net proceeds of the sale.

33. As of November 22, 2019, the Buyer had readily available funds of no less than $2,869,600 to effectuate Closing. A true and correct copy of the Buyer's November Bank Statement, as redacted, is attached as **Exhibit 8**.

34. Other than signing customary closing documents and moving the readily available funds into escrow with Homestead Title Company, LLC, no contingencies or other acts were required by the Buyer to consummate the Agreement.

35. Other than signing customary closing documents, no contingencies or other acts were required by the Debtor to consummate the Agreement.

**The Debtor's Bankruptcy Filing**

36. The Debtor hired bankruptcy counsel on November 20, 2019.

37. Just days after hiring counsel, the Debtor filed its Chapter 11 case on November 23, 2019.

38. The Buyer learned of the Debtor's bankruptcy filing via email and written letter from the Debtor's attorneys on November 25, 2019, the day before the scheduled

closing. A true and correct copy of the November 25, 2019 email and letter is attached as **Exhibit 9**.

39. The Debtor filed its schedules on December 6, 2019, listing total assets of $9,833,352, and total liabilities of $7,834,630, resulting in a positive net equity position of $1,998,722. (Docket No. 9, p. 1.)

40. The Debtor listed LNR's claim amount as $7,724,319. (*Id.* at p. 9.)

41. The aggregate amount of the Debtor's twelve listed unsecured creditors totals only $63,006. (*Id.* at pp. 11-14.)

42. The Buyer is listed as a creditor with an "unknown" disputed claim amount on Schedule E/F based on a "Termination of Offer to Purchase." (*Id.* at p. 12.)

43. The Debtor asserts that the Agreement is an executory contract, and further states that the "Debtor rejects the Commercial Offer to Purchase." (*Id.* at p. 22.)

44. The Statement of Financial Affairs filed by the Debtor reveals that the Debtor continued to make current payments to the Lender of $65,469/mo. through and including November 2019, the month that the Debtor filed this Case. (*Id.* at p. 25.)

45. Upon belief, until the Debtor's Chapter 11 filing, there was no payment default under the LNR Note.

46. The original maturity date of the LNR Note was not set to occur until May 1, 2024.

47. The Debtor filed its Case because it sought to retain, rather than sell, The Collegiate.

48. The Debtor's primary reason for filing the Case was to avoid Closing on the Agreement.

49. The Debtor has indicated within its schedules and verbally to the Buyer of Debtor's intention to reject the Agreement under 11 U.S.C. § 365(a).

## FIRST CAUSE OF ACTION
### Declaratory Relief – Nature of Agreement

50. The Buyer incorporates all prior allegations as if set forth fully herein.

51. The Agreement is governed by Wisconsin law.

52. Pursuant to Wis. Stat. § 806.04 (Uniform Declaratory Judgments Act):

> Any person interested under . . . written contract . . . may have determined any question of construction or validity arising under the . . . contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

53. Pursuant to Wis. Stat. § 840.03 (Real property remedies), any person having an interest in real property may bring an action relating to that interest, and seek a declaration of such interest.

54. Through the Agreement, the Buyer has an interest in real property owned by the Debtor.

55. Pursuant to 28 U.S.C. § 2201, any court of the United States may declare the rights and other legal relations of any interest party seeking such declaration within a case of actual controversy within such court's jurisdiction.

56. The controversy alleged within this adversary proceeding falls within the purview of Wis. Stat. §§ 806.04 and 840.03, and 28 U.S.C. § 2201(a).

57. Accordingly, this Court has the authority to declare the legal rights of the parties under the Agreement.

58. Pursuant to Fed. R. Bankr. P. 7001(2), this Court has the authority to determine the validity and extent of the Buyer's interest in the Agreement and The Collegiate.

59. Pursuant to Fed. R. Bankr. P. 7001(9), this Court has the authority to issue declaratory relief to the Buyer.

60. An actual, present, and justiciable controversy exists between the Buyer and Debtor regarding the Agreement.

61. The controversy between the Buyer and the Debtor is definite and concrete in scope and affects the legal rights of the parties.

62. The controversy between the Buyer and the Debtor is real, substantial, and not hypothetical in nature.

63. Absent a judicial determination of this adversary proceeding, the Buyer has suffered and will continue to suffer immediate, permanent, and irreparable harm.

64. The Agreement was and is a valid and binding contract between the Parties.

65. No material contingencies to Closing existed other than signing customary closing documents and releasing funds at the closing table.

66. The Buyer did not materially breach the Agreement.

67. The Buyer substantially performed all of Buyer's obligations under the Agreement.

68. The Buyer was ready, willing, and able to consummate Closing on the Agreement, and remains ready, willing, and able to do so.

69. Despite the Buyer's substantial performance of its obligations under the Agreement, the Debtor failed to close.

70. Accordingly, the Agreement is not an "executory contract," as that term is used within 11 U.S.C. § 365(a).

71. Specifically, due to the Buyer's substantial performance of all its obligations under the Agreement, the Agreement no longer remains so underperformed that it is still subject to the Debtor's ability to reject it.

## SECOND CAUSE OF ACTION
**Declaratory Judgment – Inability to Reject the Agreement**

72. The Buyer incorporates all prior allegations as if set forth fully herein.

73. The Debtor's decision to assume or reject an executory contract should only be approved through a review of the "business judgment" test.

74. Specifically, the Debtor must act prudently, on an informed basis, in good faith, and with honest belief that the proposed rejection is in the best interests of creditors.

75. A proposed rejection must benefit the general unsecured creditors.

76. Rejection should not be allowed when the primary beneficiary of the rejection is the debtor—as opposed to creditors.

77. Even if the Agreement is an "executory contract" as that term is used within 11 U.S.C. § 365(a), the Debtor may not reject it.

78. Closing on the Agreement would provide sufficient cash such that all creditors would be unimpaired or otherwise paid in full through Closing proceeds.

79. The Debtor's purported rejection of the Agreement is not in the best interests of creditors.

80. The Debtor's purported rejection of the Agreement does not benefit creditors, and is only in the self-interest of the Debtor's owners.

81. The Debtor's purported rejection of the Agreement would not pay creditors' claims in full or otherwise treat all creditors as unimpaired.

82. The Debtor's purported rejection of the Agreement fails the business judgment test.

83. The Debtor's purported rejection of the Agreement is not in good faith.

84. Accordingly, even if the Agreement is an executory contract, the Agreement cannot be rejected by the Debtor.

### THIRD CAUSE OF ACTION
### Breach of Contract - Specific Performance

85. The Buyer incorporates all prior allegations as if set forth fully herein.

86. The Agreement (Addendum at Section 15.B.) provides that in the event Debtor fails to close the Agreement, the Buyer may sue for specific performance.

87. Pursuant to Wis. Stat. § 840.03(f), specific performance is an equitable remedy available to a person having an interest in real property.

88. The Buyer has an interest in the real property of the Debtor pursuant to the Agreement.

89. The Buyer intended on purchasing both The Varsity and The Collegiate as a strategic entry into the Madison housing market.

90. The Collegiate represented a unique, strategic property for the Buyer.

91. Pursuant to Fed. R. Bankr. P. 7001(7) this Court has the authority to award equitable relief, including specific performance of the Agreement.

92. The Buyer substantially performed all of the Buyer's obligations under the Agreement.

93. Despite the Buyer's substantial performance of its obligations under the Agreement, the Debtor failed to close.

94. The Debtor's failure to close was a breach of the agreement.

95. Awarding specific performance is not unfair, unreasonable, impossible, or oppressive in this case.

96. Awarding specific performance is in the best interests of creditors and the estate.

97. The Buyer is entitled to the equitable remedy of specific performance of the Agreement.

### FOURTH CAUSE OF ACTION
### Damages - Costs, Expenses, and Attorneys' Fees

98. The Buyer incorporates all prior allegations as if set forth fully herein.

99. The Agreement (Addendum at Section 18) provides that in connection with any litigation regarding the Agreement, the prevailing party shall be entitled to recover costs, expenses, and reasonable attorneys' fees.

100. The Debtor breached the Agreement due to, among other things, its failure to close.

101. The Buyer is entitled to recover costs, expenses, and reasonable attorneys' fees under the Agreement due to the Debtor's breach for failing to close.

**WHEREFORE**, the Buyer respectfully requests that the Court:

A.Declare that the Agreement is not an executory contract which would be subject to rejection by the Debtor under 11 U.S.C. § 365;

B.Declare that, even if the Agreement is an executory contract, the Agreement cannot be rejected by the Debtor under the facts of this case;

C.Declare that the Buyer has not breached the Agreement;

D.Declare that the Debtor has an obligation to perform its obligations owed to the Buyer pursuant to the Agreement;

E.Declare that the Debtor's failure to perform its obligations was a breach of the Agreement;

F.Order the Debtor to close on the transaction contemplated under the Agreement and award the Buyer the remedy of specific performance of the Agreement;

G.Award costs, expenses, and reasonable attorneys' fees as allowed under the Agreement;

H.Alternatively award supplemental relief under Wis. Stat. § 840.035 in the form of costs, expenses, and reasonable attorneys' fees; and

I.For such other relief that the Court deems just and appropriate under the circumstances.

Dated: December 23, 2019.

        MICHAEL BEST & FRIEDRICH LLP

        *By:* *s/ Justin M. Mertz*
        Justin M. Mertz
        jmmertz@michaelbest.com
        100 E. Wisconsin Ave. #3300
        Milwaukee, WI 53202
        Phone: 414.225.4972

        Attorneys for the Plaintiff,
        CC6 Collegiate LLC

215593-0001\27177391.v5